# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**BONNIE A. HAGOPIAN,**

                   Plaintiff,

          -vs-

                                               **Case No. 09-C-926**

**JOHNSON FINANCIAL GROUP, Inc.**
**LONG-TERM DISABILITY PLAN,**
**an ERISA PLAN,**

**and**

**UNUM LIFE INSURANCE COMPANY OF**
**AMERICA, foreign insurance corporation,**

                   Defendants.

---

# DECISION AND ORDER

---

This ERISA action for the recovery of benefits pursuant to a long-term disability plan comes before the Court on cross-motions for summary judgment. For the reasons that follow, defendants' motion is granted, plaintiff's motion is denied, and this matter is dismissed.

## BACKGROUND

Unum Life Insurance Company of America ("Unum") issued group policy no. 557254 (the "Policy") to Johnson Financial Group, Inc. ("Johnson Financial") on or about March 1, 2001. The plaintiff, Bonnie Hagopian ("Hagopian"), worked for Johnson Financial as a full time active employee. She began as an administrative assistant, and over time became a

teller supervisor, funds transfer-treasury representative, commercial loan representative, human resources administrator, human resources analyst and risk review auditor. As a benefit of her employment, Hagopian was entitled to coverage under the Policy.

The Policy provides for disability when the claimant is "limited from performing the material and substantial duties of" the claimant's "regular occupation due to . . . sickness or injury" and the claimant has a "20% or more loss" in "indexed monthly earnings due to the same sickness or injury." After 36 months of payments, Unum must determine that, due to the same sickness or injury, the claimant is unable to perform "the duties of any gainful occupation for which" the claimant is "reasonably fitted by education, training or experience." Regular occupation means the occupation being routinely performed when disability begins, as it is normally performed in the national economy. Disabilities due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness, have a limited pay period up to 24 months. With respect to Unum's authority to make benefits decisions, the Policy provides that when "making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."

On or about November 2, 2005, plaintiff submitted a claim for long term disability benefits. Her last day of work was May 30, 2005. At that time, plaintiff's monthly earnings rate was $3,508.33, yielding a gross monthly benefit rate of $2,105.00. On February 24, 2006, Unum notified plaintiff that it would accept the long-term disability claim and initiate payment retroactive to November 28, 2005, the date the 180 day elimination period ended.

Unum began making monthly benefit payments at the rate of $2,105. Unum also approved a premium waiver on the group life insurance policy.

In conjunction with her claim for benefits, plaintiff submitted attending physician statements from Marilyn Befera, Ph. D. and Stephen Callaghan, M.D. Both physicians opined that as of May 31, 2005, plaintiff was unable to work because of recurrent major depression. Plaintiff also claimed a history of osteoarthritis, fibromyalgia, chronic fatigue, asthma, allergies, and chronic sinusitis. Plaintiff asserted that she was unable to work because of difficulties in concentrating, lack of motivation and poor performance.

On or about November 21, 2005, Dana Trotter, M.D., provided an attending physician's statement to Unum, opining that Hagopian was unable to return to work "permanently" as a result of arthritis and fibromyalgia. Also on November 21, 2005, Haney Assaad, M.D., provided an attending physician's statement noting that as of May 31, 2005, plaintiff was unable to perform any kind of work because of asthma, fibromyalgia, osteoarthritis, thyromegaly, colon polyps, and irritable bowel syndrome. While Dr. Assaad identified plaintiff's first day of disability as May 31, 2005, he had not begun treatment of plaintiff for any conditions until July 27, 2005.

In a letter to Unum dated March 11, 2006, plaintiff claimed that as of May 31, 2005, she had been unable to work for some time and it was at a routine appointment that Dr. Callaghan noticed her "deterioration both physically and mentally and put [her] on medical leave." Plaintiff went on to note that she had been "completely overwhelmed for a long time

with [her] health problems, trying to take care of [her] husband who has MS, caring for [her] mother, father and grandmother all of whom passed away in recent year."

On March 31, 2006, Unum undertook a clinical review. On or about April 7, 2006, Unum determined that plaintiff's restrictions and limitations were supported from the psychiatric standpoint, though there was little or no support for disabling condition based upon her diagnosis of fibromyalgia or arthritis.

Plaintiff's medical records were referred to physician consultant, David A. Goldsmith, M.D. Dr. Goldsmith found that the information was not reliable regarding plaintiff's activities and level of functioning. Dr. Goldsmith noted that plaintiff "has been highly communicative of somatic distress and related dysfunction – likely influenced by psychological factors (e.g., somatization, pre-occupation) volitional issues (e.g., she was 'determined to go out on disability') and/or secondary gain incentives (e.g., disability income and comfort with 'retirement.')"

Plaintiff's file was then referred to Thomas McLaren, PhD., for review of plaintiff's psychological testing. Dr. McLaren noted that a November 29, 2005 psychological test was within normal limits with borderline attention difficulties in the auditory domain. He noted that the May 24, 2006 testing indicated a decline. Dr. McLaren opined, however, that the tests administered for attention-concentration were not adequate to assess plaintiff's cognitive functional capacity and a more comprehensive neuropsychological examination for correlation was required.

On April 18, 2007, Unum completed an occupational assessment concerning plaintiff's condition. In terms of strength, Unum determined that plaintiff's occupation was sedentary in nature, generally requiring no more than an exertion of ten pounds of force. The position also required analytical skills.

On May 10, 2007, plaintiff's treating neurologist, Tracy Purath, M.D., indicated that plaintiff's current diagnosis was intractable migraine with restrictions and limitations of not sitting or standing for extended periods of time. Dr. Purath indicated that it was difficult to estimate when plaintiff could return to work.

On July 29, 2007, plaintiff was awarded Social Security Disability Income benefits. Under the Plan, the grant of social security disability benefits reduced the amount of benefits payable by Unum. The award was based on the diagnoses of fibromyalgia and affective disorders.

On September 4, 2007, plaintiff provided a supplemental statement, indicating that she remained unable to work. Plaintiff noted that she was unable to "sit-stand longer than ten minutes at a time, write, lift, push and pull" "is very painful and produces migraines." On September 19, 2007, Dr. Crevier indicated that, psychologically, plaintiff had difficulty concentrating with memory deficits. Dr. Crevier offered restrictions and limitations of no lifting, pulling, carrying and that she was limited from prolonged sitting, standing, walking or typing.

In conjunction with its administration of plaintiff's claim, Unum obtained a copy of the documents produced to the Social Security Administration. In his June 27, 2007 report,

SSA physician Syd Foster determined that plaintiff had full time sedentary work capacity. The basis for the SSA's determination that plaintiff was disabled was her mental residual functional capacity.

On December 18, 2007, Unum undertook an additional medical review. On December 20, Matthew Hine, M.D., reviewed plaintiff's medical records and the documents considered by the SSA in evaluating plaintiff's claim for SSDI benefits. For his part, Dr. Hine concluded that plaintiff's restrictions and limitations were uncertain. He reasoned that the medical records did not support a significant impairment of memory, that plaintiff's headaches were disabling or the cause of plaintiff's chronic pain syndrome. Dr. Hine noted that a functional capacity evaluation or independent medical evaluation was recommended to ascertain plaintiff's functional capacity.

On December 26, 2007, Dr. Hine contacted Dr. Crevier to discuss plaintiff's conditions and restrictions and limitations. Dr. Crevier noted that she had seen plaintiff one time approximately three months ago when she reported some knee pain and minor hand swelling. However, hand and wrist motion were good. Dr. Crevier also noted that she thought that Dr. Foster's opinion regarding full-time sedentary physical capacity was not unreasonable. Dr. Hine noted that Dr. Crevier did not offer an opinion regarding plaintiff's capacity to perform occasional versus frequent keyboarding.

In a follow-up report on December 26, 2007, Dr. Crevier noted that from a physical perspective, she agreed that plaintiff was capable of full time sedentary activity which permitted sitting 6-8 hours per day (changing position intermittently), standing or walking

a total of 1-2 hours intermittently, and handling 0-10 pounds occasionally. Dr. Crevier also opined that plaintiff could perform keyboarding frequently, up to eight hours out of an eight hour day. Unum requested that Dr. Crevier provide any additional information that would support plaintiff's functional impairment, if any.

Unum scheduled a functional capacity evaluation on June 12 and 13, 2008. Plaintiff appeared on June 12 but not June 13. She eventually completed the functional capacity evaluation on June 19.

On June 12, 2008, a surveillance investigator observed plaintiff leaving the functional capacity evaluation at approximately 3:50 p.m. While leaving the evaluation, plaintiff utilized a cane. Approximately ten minutes later, plaintiff arrived at a local convenience store where she opened the rear driver's side door, leaned inside, closed the door, and walked to the store without use of a cane. Plaintiff was further observed in the store standing, bending, lifting, carrying, pushing a shopping cart and walking in a normal, unrestricted fashion. Approximately one hour later, plaintiff exited the store, opened the trunk, lifted the groceries from the cart into the trunk, closed the trunk and drove the vehicle away.

On June 27, 2008, Unum obtained a copy of the functional capacity evaluation, which concluded that plaintiff was able to work at a sedentary physical level for an eight hour day. Based on the foregoing, by its letter dated July 11, 2008, Unum determined that plaintiff is not entitled to additional disability benefits. Unum reasoned that the functional capacity evaluation disclosed that plaintiff had the ability to perform her regular occupation on a full-time, sustained basis. Additionally, observation of plaintiff's activities appeared inconsistent

with her stated level of activity. Unum noted that Dr. Crevier had determined that she was able to operate a keyboard on a frequent basis and, that while her medical history was significant for numerous conditions, had indicated that plaintiff's condition was not so severe as to preclude her from performing her occupational duties.

Plaintiff disagreed with Unum's decision to discontinue disability benefits by her letter dated September 29, 2008. Plaintiff also provided copies of medical records for Unum's review. Dr. Crevier, by her letter dated September 23, 2008, opined that her December 26, 2007 assessment of plaintiff's functional ability was incorrect and that plaintiff was permanently disabled. Unum provided the foregoing to a clinical specialist for review. She concluded that there was no new evidence provided to refute the determination made at the FCE that plaintiff had sedentary work capacity and could perform her own occupation. By its letter dated November 13, 2008, Unum affirmed its earlier benefits decision.

Thereafter, plaintiff filed a formal appeal. Unum sought updated medical records from Drs. Crevier, Tagalakis and Murphy. Unum provided the information it obtained to its consulting physician, Susy Vergot, M.D. Dr. Vergot concluded, based on a record review, that while plaintiff's diagnosis was supported, her restrictions and limitations did not preclude her from performing sedentary work on a full time basis or from working in her own occupation. Dr. Vergot summarized plaintiff's medical history, the FCE and surveillance findings. Dr. Vergot's opinions were provided to Dr. Crevier. Dr. Crevier responded that she "would continue to request full disability secondary to the patient's extensive physical limitations." Dr. Crevier did not present any new clinical findings.

At plaintiff's request, Unum also considered plaintiff's complaint of chronic pain. On March 19, 2009, Dr. Vergot provided an addendum to her February report. In the addendum, Dr. Vergot responded to questions concerning the impact of plaintiff's alleged chronic pain, the basis for the treating physician's opinions, and Dr. Crevier's change in opinion. Dr. Vergot noted the discrepancy between plaintiff's reported limitations and those disclosed by the FCE and surveillance. She also noted that while Dr. Crevier's opinions changed, nothing in the medical records supported the change.

Unum's consulting physician, Joseph Sentef, M.D., agreed that plaintiff's medical records disclosed the ability to perform sedentary work capacity on a full-time basis. Like Dr. Vergot, Dr. Sentef never met or examined the plaintiff. Based on the foregoing, by its letter dated April 8, 2009, Unum affirmed its earlier decision to discontinue payment of disability benefits, writing that "the reviews of the clinical information within the file do not support restrictions and limitations that would preclude the performance of your occupation from a physical perspective, we must uphold the previous decision to close your claim."

On July 6, 2009, Dr. Crevier completed a detailed Residual Functional Capacity Questionnaire. On July 28, 2009, Ross K. Lynch, Ph.D., completed a vocational report addressing plaintiff's ability to perform substantial gainful work activity on a sustained, reliable and dependable basis in the competitive labor market. On August 10, 2009, plaintiff's counsel submitted a detailed letter along with the recent reports of Dr. Crevier and Dr. Lynch to Unum, requesting reconsideration of the claim denial pursuant. Unum

reiterated its denial of the claim on August 26, expressly refusing to consider the reports of Dr. Crevier and Dr. Lynch.

## ANALYSIS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## I.       Standard of review

If a benefits plan confers discretionary authority to determine eligibility and benefits under the plan, judicial review is limited to determining whether the denial was arbitrary and capricious. *Steele v. Life Ins. Co. of N. Am.*, 507 F.3d 593, 595 (7th Cir. 2007). The Policy language confers discretionary authority in the following language: "When making a benefit determination under the policy, Unum has *discretionary authority* to determine your eligibility for benefits and to interpret the terms and provisions of the policy." This language is sufficient to confer discretionary authority. *Shyman v. Unum Life Ins. Co. of Am.*, 427 F.3d 452, 455 (7th Cir. 2005); *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir. 2006).

Under the arbitrary and capricious standard, courts should uphold an administrator's determination unless it is "downright unreasonable." *Davis*, 444 F.3d at 576. The phrase "downright unreasonable" "should not be understood as requiring a plaintiff to show that only a person who had lost complete touch with reality would have denied benefits." *Holmstrom v. Metro. Life Ins. Co.*, — F.3d —, 2010 WL 3024870, at *6 n.5 (7th Cir. Aug. 4, 2010). Instead, the phrase "is merely a shorthand expression for a vast body of law applying the arbitrary-and-capricious standard in ways that include focus on procedural regularity, substantive merit, and faithful execution of fiduciary duties." *Id.*

Courts examine several factors, including the impartiality of the decision making body, the complexity of the issues, the process afforded the parties, the extent to which the decision makers utilized the assistance of experts where necessary, and the soundness of the fiduciary's ratiocination. *Carr v. Gates Health Care Plan*, 195 F.3d 292, 295 (7th Cir. 1999). Absent unusual circumstances, such as fraud or bad faith, a decision to deny benefits is not deemed arbitrary and capricious if it is possible to offer a reasonable explanation for that decision based on the evidence. *Trombetta v. Cragin Fed. Bank for Sav. Emp. Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). A decision is arbitrary and capricious "only when the decisionmaker 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence . . . or is so implausible that it could not be ascribed to difference in view or the product of . . . expertise.'" *Id.* (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)). Even so, review under this

standard is not a "rubber stamp," and courts must not uphold a denial of benefits "when there is an absence of reasoning in the record to support it." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 772, 774-75 (7th Cir. 2003).

In *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2346 (2008), the Supreme Court held that when, as here, the entity that administers an employee benefit plan (Unum) both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, this "dual role creates a conflict of interest." Hagopian makes the now-familiar argument that *Glenn* requires a more searching standard of review. This argument has been consistently rejected. *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir. 2009) ("[T]he Court's decision in *Glenn* did not create a new standard of review – a 'heightened arbitrary and capricious standard' – for claims involving a conflict of interest"); *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 n.1 (7th Cir. 2009) (rejecting the suggestion that *Glenn* "fundamentally altered the paradigm for adjudicating ERISA claims" by requiring a more searching review); *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009); *Fischer v. Liberty Life Assurance Co. of Boston*, 576 F.3d 369, 375 (7th Cir. 2009). Indeed, *Glenn* explicitly refused to adopt a rule that "in practice could bring about a near universal review by judges *de novo* – *i.e.*, without deference – of the lion's share of ERISA plan claims denials." 128 S.Ct. at 2350. The conflict is only to be "weighed as a factor in determining whether there is an abuse of discretion." *Id.*

The more difficult question is how much weight to assign this inherent conflict of interest. In *Glenn*, the Court wrote that a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." 128 S. Ct. at 2351. On the other hand, it should prove "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.*

Hagopian argues that Unum's conflict of interest should be afforded great weight, perhaps to the point of being decisive, because Unum has a history of biased claims administration. The Supreme Court in *Glenn* singled-out Unum (although Unum was not a party to that case) by citing a law review article detailing Unum's history of abusive practices. 128 S.Ct. at 2351 (citing John H. Langbein, *Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA*, 101 Nw. U.L. Rev. 1315, 1317-21 (2007)). This has had the perhaps unintended effect of placing a target on Unum, as numerous plaintiffs (including Hagopian) cite to *Glenn* and the Langbein article as presumptive evidence that Unum's structural conflict should be given added weight in cases against Unum. *See, e.g., Holifield v. Unum Life Ins. Co. of Am.*, 640 F. Supp. 2d 1224, 1236-37 (C.D. Cal. 2009); *Bartholomew v. Unum Life Ins. Co. of Am.*, 588 F. Supp.

2d 1262, 1267 (W.D. Wash. 2008); *Burton v. Unum Life Ins. Co. of Am.*, No. A-09-CA-532-SS, 2010 WL 2430767, at *10-11 (W.D. Tex. June 14, 2010); *Uquillas v. Unum Life Ins. Co. of Am.*, No. CV 07-00542 MMM (AJWx), 2010 WL 330255, at *17 (C.D. Cal. Jan. 21, 2010). For example, the Eighth Circuit cited the Langbein article and noted that the "Supreme Court itself commented on Unum's 'history of biased claims administration.' Unum's history of arbitrarily denying claims such as [the plaintiff's] is another factor that the Court must consider in determining whether Unum abused its discretion in denying [the plaintiff's] claim." *Chronister v. Unum Life Ins. Co. of Am.*, 563 F.3d 773, 776 (8th Cir. 2009) (internal citations omitted). Similarly, the Second Circuit placed the burden on Unum to come forward with evidence disputing the Langbein article: "In light of First Unum's well-documented history of abusive tactics, *and in the absence of any argument by First Unum showing that it has changed its internal procedures in response*, we follow the Supreme Court's instruction and emphasize this factor here." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir. 2008) (emphasis added).

However, the Court finds that Unum's conflict of interest should not be given heightened importance in this case merely because of Unum's past practices that were documented in the Langbein article. The Langbein article criticized Unum's questionable practices in the decade leading up to 2003, but Hagopian's claim wasn't filed until 2005. Therefore, cases like *McCauley* and *Chronister* are distinguishable because the claims in those cases at least fell within the timeframe discussed in the article. *Jones v. Unum Provident Corp.*, 596 F.3d 433, 438 (8th Cir. 2010) (criticism of Unum's practices in the

decade ending in 2003 did not apply to claim filed in 2005). Hagopian argues that Unum's biased claims administration survived this era, but offers only speculation to support this assertion. Even though the record in an abuse of discretion case is normally limited to matters in the administrative record, *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629-30 (7th Cir. 2004); *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999), one "side effect of *Glenn* has been that plaintiffs challenging a plan administrator's denial of benefits are entitled to reasonable discovery to explore these factors and evaluate the 'gravity of the conflict.'" *Gessling v. Group Long Term Disability Plan for Emp. of Spring/United Mgmt. Co.*, 693 F. Supp. 2d 856, 868 (S.D. Ind. 2010). Accordingly, Hagopian was certainly entitled to explore this issue through discovery, but she offers nothing probative for the Court to consider. In the absence of any evidence bearing on Unum's conflict of interest as it pertains to the processing of Hagopian's claim, this factor should not be given greater weight than normal. *Holifield*, 640 F. Supp. 2d at 1236 ("The Administrative Record here, however, precludes the Court from placing any weight on such historical practice, as it contraindicates any of the bad faith practices Unum was accused of implementing in Langbein's article occurred here"). The Court finds it hard to believe that Unum's conflict of interest is *ipso facto* entitled to great weight in every case where Unum denies benefits under an abuse of discretion standard.

## II.    Unum's denial of benefits was not arbitrary and capricious

Hagopian argues that Unum forced her to prosecute a social security disability claim, at Unum's expense, so that Unum could reduce its long term disability benefits by the

amount of social security benefits, and then artificially attempted to distinguish and ignore the social security disability determination. This sequence of events is generally relevant in the abuse of discretion analysis. *See Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998); *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009). However, Unum did not ignore Hagopian's social security award. Instead, Unum explained that the award did not mandate a finding of disability for a variety of reasons. July 11, 2008 letter discontinuing benefits, UA-CL-LTD-001922; April 8, 2009 letter denying appeal, UA-CL-LTD-002325. First, to the extent that the social security award was based on affective disorders, the Policy limits the amount of time benefits can be paid for disabilities based on psychiatric conditions. Second, to the extent that Ms. Hagopian was awarded disability benefits for fibromyalgia, the medical information in the SSA file was dated. Unum's decision was based on more recent medical information which indicated that she had the capacity to perform her occupation on a full time, sustained basis. This evidence includes the June 2008 Functional Capacity Evaluation and surveillance which indicated that her limitations were exaggerated or overstated. Third, the SSA approved Hagopian's claim, in part, based upon non-medical factors under the medical-vocational rules, including her advanced age without a formal vocational analysis of transferable skills. However, age is not a determining factor for benefits under the Policy. A social security award is not binding when, as here, the Policy's definition of disability "is different from – and arguably more stringent than – the SSA's definition." *Love*, 574 F.3d at 398; *Black v. Long Term Disability Ins.*, 582 F.3d 738, 748 (7th Cir. 2009) (when the "Social Security Act's disability standard is different from that in

the ERISA plan, a Social Security determination is just one more factor for consideration in an ERISA benefits determination").

Hagopian argues that Unum abused its discretion by refusing to credit the opinion of her treating physician, Dr. Crevier. Hagopian even goes so far to claim that Unum "snookered" Dr. Crevier to concede that she could at one time perform sedentary work, then ignored Dr. Crevier's withdrawal of the comment. Plan administrators do not owe any special deference to the opinions of treating physicians, but they may not simply ignore their medical conclusions or dismiss those conclusions without explanation. *Love* at 397-98 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). Unum did not ignore Dr. Crevier's opinion. During the appeal process, Dr. Vergot reviewed Dr. Crevier's medical records. Dr. Vergot also contacted Dr. Crevier, who indicated that she was not in agreement with the opinion that Hagopian was capable of full-time sedentary activity. UA-CL-LTD-002319 (April 8, 2009 letter). Dr. Vergot noted that a "copy of the FCE was sent to Dr. Crevier who stated she agreed that the claimant was capable of full-time sedentary work. Dr. Crevier changed her pre-closure statement and now states she thinks Ms. Hagopian is fully disabled secondary to her extensive physical limitations. There has been no change in physical findings or tests to support this change of opinion." UA-CL-LTD-002324 (April 8, 2009 letter). The file was then referred to Dr. Sentef, who concurred with Dr. Vergot:

> The claimant did have an FCE, which revealed she could perform a sedentary occupation. The FCE copy was sent to Dr. Crevier, who stated she agreed with the claimant being able to perform full time sedentary work but then she changed her pre-

> closure statement and thinks the claimant was fully disabled secondary to extensive physical limitations. There have not been any dramatic changes in her physical findings since her FCE. Looking at everything individually and as a whole, the claimant should be able to perform her occupation on a sedentary level, 8 hours per day, 40 hours per week.

UA-CL-LTD-002325 (April 8, 2009 letter). Accordingly, Unum offered a well-reasoned explanation for rejecting Dr. Crevier's ultimate opinion that Hagopian was incapable of sedentary work. And there was nothing wrong with citing Dr. Crevier's initial opinion as further evidence in support of Unum's denial of benefits, especially when Unum directly confronted Dr. Crevier's ultimate opinion to the contrary.

Hagopian also argues that Unum abused its discretion by refusing to consider evidence submitted after the final denial of her claim: a Permanent Physical Residual Functional Capacity Questionnaire from Dr. Crevier, dated July 6, 2009, and a vocational report from Dr. Ross Lynch, dated July 28, 2009. Hagopian cites language from the Unum Claims Manual which suggests that after the appeal process is completed, the administrative record is open to "additional medical records or employment records or outside assessments of the claimant's condition (such as professional vocational analyses)." D. 23-4 at 3. However, the claims manual also states that the administrative record is closed to additional information if no additional information is deemed necessary after the first appellate review is concluded. *Id.* No matter what the claims manual says or how it can be interpreted, it was not an abuse of discretion for Unum to close the administrative review process and refuse to consider the post-appeal evidence submitted by Hagopian. *See Tegtmeier v. Midwest Operating Eng. Pension Fund*, 390 F.3d 1040, 1047 (7th Cir. 2004); *Speciale v. Blue Cross*

*and Blue Shield Ass'n*, 538 F.3d 615, 620, 623 (7th Cir. 2008). A plan is not required to provide an "indefinite appeals process." *Wagner v. Allied Pilots Ass'n Disability Income Plan*, No. 08 C 2750, 2009 WL 112802, at *4 (N.D. Ill. Jan. 16, 2009); *Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1096 (8th Cir. 1992) (the administrative review process "must end at some point"). Unum informed Hagopian on multiple occasions that any additional information should be submitted within 180 days of the July 11, 2008 denial of benefits. UA-CL-LTD-001923 (July 11, 2008 letter); UA-CL-LTD-002046 (November 13, 2008 letter). Unum also held the record open, allowing Hagopian more time to provide supporting evidence during the appeal process. UA-CL-LTD-002322-2323 (April 8, 2009 letter).

Closely related to the previous argument is Hagopian's objection that Unum failed to comply with 29 C.F.R. § 2560.503-1(g)(1)(iii), which provides that the initial denial notice must provide a "description of any additional material or information necessary for the claimant to *perfect the claim* and an explanation of why such material or information is necessary" (emphasis added). According to Hagopian, Unum should have provided explicit notice that a treating physician-authored functional capacity evaluation and a vocational assessment were necessary to "perfect" her claim. Aug. 10, 2009 letter from Mrs. Hagopian's counsel, UA-CL-LTD-002375. This argument misconstrues the regulation. Unum's denial notice closed Hagopian's claim and invited an appeal, stating that if "you or your physician(s) have additional information to support your request for disability benefits, we will be happy to reconsider your claim," UA-CL-001922 (July 11, 2008 letter), but Unum

did not *need* additional information to process Ms. Hagopian's claim. *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 661 (7th Cir. 1997) ("perfect the claim" regulation only applies when "more information is needed for a plan administrator to review the denial of a claim"). Stated another way, "perfect the claim" is not synonymous with "win the appeal." *Terry v. Bayer Corp.*, 145 F.3d 28, 39 (1st Cir. 1998); *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 236 (4th Cir. 1997) ("Ellis has somehow conflated these purposes and come to the erroneous belief that MetLife is under an obligation to inform her of what she needs to tell MetLife in order to obtain disability benefits. That is not MetLife's role as a fiduciary").

More generally, the pertinent ERISA regulations, 29 C.F.R. § 2560.503-1, require that specific reasons for the denial be communicated to the claimant and that the claimant be afforded an opportunity for a "full and fair review" by the plan administrator. *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir. 1992). The Court must inquire whether the beneficiary was "supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Id.* at 690. In other words, substantial compliance with ERISA's notice regulations is sufficient. *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 382 (7th Cir. 1994).

The initial denial letter acknowledged that Hagopian had "multiple medical diagnoses at this time. A review of the medical information [does] not indicate that these conditions, independently or in combination rise to the level of impairment which precludes you from performing the material and substantial duties of your regular occupation of Risk Review

Analyst." UA-CL-LTD-001922 (July 11, 2008 letter). Unum also noted that the "FCE of June 12th & 19th indicate that you have some limitations and restrictions. *This FCE also reveals that you currently have the physical capacity to perform the material and substantial duties of a sedentary occupation on a full time and sustained basis*." *Id.* (emphasis added). Unum concluded by emphasizing that the "available information indicates that you are capable of performing your own occupation." *Id.* A few months later, after Hagopian provided additional information for review, but before her appeal was closed, Unum informed Hagopian that "[u]pon review of this information it was determined that there is no new medical information, such as testing, that would change the determination and findings of the Functional Capacity Evaluation completed on June 12, 2008 and June 19, 2008." UA-CL-LTD-002044 (November 13, 2008 letter). Therefore, Unum's letters clearly detailed the reasons Hagopian's claim was denied, allowing Hagopian to pursue an effective review procedure. Unum substantially complied with ERISA's notice regulations.

Finally, Hagopian argues that Unum improperly discounted her subjective complaints of pain pursuant to her fibromyalgia diagnosis. Although a plan "may not deny benefits solely on the basis that the symptoms of the claimed disability are subjective, a plan may deny benefits because a claimant has failed properly to document pain-induced functional limitations." *Majeski*, 590 F.3d at 485 (citing *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003) and *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 323 (7th Cir. 2007)). Unum denied Hagopian's claim because the FCE, along with other corroborating evidence, demonstrated that she could perform her prior work at a

sedentary level.  When informed of this decision, Hagopian failed to provide evidence to the contrary – objective evidence which demonstrated that her "pain-induced functional limitations" prevented her from performing the material and substantial duties of her occupation.  It was not an abuse of discretion for Unum to deny benefits under these circumstances.  "A distinction exists . . . between the amount of fatigue or pain an individual experiences, which as *Hawkins* notes is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured."  *Williams*, 590 F.3d at 322.

## III.    Unum's conflict of interest was not decisive

Therefore, the only factor working in Hagopian's favor is the structural conflict of interest highlighted by *Glenn*.  Regarding *Glenn*, the Seventh Circuit is "still pondering . . . just *how* to consider a plan administrator's conflict of interest."  *Majeski*, 590 F.3d at 482.  In *Marrs v. Motorola, Inc.*, 577 F.3d 783 (7th Cir. 2009), Judge Posner observed that there are two ways to interpret *Glenn*.  "One, which tracks its language and has been echoed in opinions in this and other circuits, makes the existence of a conflict of interest one factor out of many in determining reasonableness.  That sounds like a balancing test in which unweighted factors mysteriously are weighed.  Such a test is not conducive to providing guidance to courts or plan administrators."  577 F.3d at 788 (internal citations omitted).  However, the "test can be made more directive, without contradicting the Court's opinion, by first recognizing that while a decision may *look* reasonable if one just reads the decision and the record, a decision that is 'reasonable' rather than clearly correct is a decision that

might just as well have gone the other way, as when 'reasonable' is used, as it often is, to mean that a ruling was not an abuse of discretion." *Id.* at 789 (emphasis in original) (internal citations omitted). If the "circumstances indicate that probably the decision denying benefits was decisively influenced by the plan administrator's conflict of interest, it must be set aside. . . . The *likelihood* that the conflict of interest influenced the decision is therefore the decisive consideration . . ." *Id.* (emphasis in original). Accordingly, it is not the "existence of a conflict of interest – which is a given in almost all ERISA cases – but the *gravity* of the conflict, as inferred from the circumstances, that is critical." *Id.* (emphasis in original).

Under either approach suggested in *Marrs*, Unum's denial of benefits was not an abuse of discretion. The record in this case betrays no procedural irregularities. Unum afforded Hagopian a "full and fair review" of her claim. Unum consulted medical experts and adequately explained why the social security disability award was not controlling. Unum's ultimate reliance on the FCE, in conjunction with other corroborating evidence, was reasonable, especially since Hagopian did not submit any objective evidence regarding her functional limitations. In this light, the denial of benefits was more than just reasonable, it was "clearly correct." *Marrs* at 789. Even beyond that, for the reasons already stated, Unum's inherent conflict of interest is not entitled to great weight in the instant case. Accordingly, there are "no indications . . . that the plan administrator labored under a conflict of interest serious enough to influence his decision consciously or unconsciously – a decision that was otherwise entirely reasonable – decisively." *Id.*

The Court also considered whether Unum's refusal to consider Hagopian's new evidence that her lawyer provided after the appeal process was closed could, in itself, be considered arbitrary and capricious in light of *Glenn*'s conflict of interest analysis. As noted above, the Seventh Circuit appears to answer this question in the negative, although many of those cases add the caveat that the new evidence isn't relevant anyway. *Tegtmeier*, 390 F.3d at 1047; *Speciale*, 538 F.3d at 620, 623. Even conceding the point that Hagopian's new evidence supports her claim for disability, the Plan contemplates only one *de novo* appeal at the administrative level. UA-CL-LTD-000103-104. Unum's stance that the Plan does not allow an indefinite appeal process was not arbitrary and capricious. Unum's interpretation of the Plan was reasonable and was not decisively influenced by its conflict of interest.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1.   Hagopian's motion for summary judgment [D. 23] is **DENIED**;

2.   Unum's motion for summary judgment [D. 18] is **GRANTED**; and

3.   This matter is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2010.

SO ORDERED,

s/ Rudolph T. Randa
HON. RUDOLPH T. RANDA
U.S. District Judge